O

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**LAREDO DIVISION**

| | | |
|---|---|---|
| **GREGORIO J. CASTANEDA, JR. dba** | § | |
| **CASTANEDA BAIL BONDS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **Civil Action No. 5:05-cv-129** |
| | § | |
| **WEBB COUNTY SHERIFF RICK** | § | |
| **FLORES, Individually and in his Official** | § | |
| **Capacity as Sheriff of Webb County;** | § | |
| **WEBB COUNTY, AND WEBB COUNTY** | § | |
| **BAIL BOND BOARD,** | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendant Rick Flores' Motion to Dismiss Plaintiff Gregorio Castaneda's civil rights suit. [Doc. No. 16]. Upon due consideration of the pleadings, responsive filings, and the governing law, the Court DENIES in part and GRANTS in part Defendant's Motion.

## I.    PROCEDURAL HISTORY AND RELEVANT FACTS

Plaintiff Gregorio Castaneda operates a bail bond business in Webb County, Texas. [Doc. No. 50-1 at 1]. In his Second Amended Complaint, Plaintiff alleges that Defendants Webb County Sheriff Rick Flores and Webb County have "instituted a series of policies which are designed to prevent Castaneda from conducting his lawful business as a bondsman." [Doc. No. 62, ¶ 7]. Specifically, Plaintiff alleges that upon refusing to donate to Sheriff Flores' electoral campaign, Flores declared that Plaintiff "would never conduct bail bond business in [Webb] [C]ounty," and that Plaintiff would "never be able to step into the county jail or county bail bond department," as is necessary for Plaintiff to conduct his business. [Doc. No.

62, ¶ 11]. Defendants thereafter followed through with this threat by allegedly engaging in malicious conduct, such as convincing the Webb County Bail Bond Board that Plaintiff was "mentally unstable," and that Plaintiff was "involved in unauthorized entry of information concerning a bond." [Doc. No. 62, ¶ 12]. Ultimately, Defendant Flores allegedly manipulated the Bond Board into suspending Plaintiff's bonding privileges for ninety days, and ordering Plaintiff to "take an anger management class." [Doc. No. 62, ¶ 15].

On June 23, 2005, Plaintiff was allegedly advised by the Webb County Sheriff's Department that "he could no longer sign bonds" because "there was an outstanding judgment against Plaintiff . . . ." [Doc. No. 62, ¶ 14]. Plaintiff alleges that the "outstanding judgment" was actually against his father, who also operated a bail bond business, but that Sheriff Flores used the outstanding judgment as a pretext to interfere with Plaintiff's business. [Doc. No. 62, ¶ 14]. Allegedly, after Plaintiff's Board-imposed suspension expired, Flores once again prevented Plaintiff from doing business, again using the outstanding judgment against Plaintiff's father as a pretext. [Doc. No. 62, ¶ 17]. Plaintiff thereby obtained a temporary restraining order ["TRO"] from a Texas state court, which prohibited Flores from obstructing Plaintiff's business operations. [Doc. No. 62, ¶ 18].

In his Second Amended Complaint, Plaintiff describes his action as one "aris[ing] under 42 U.S.C. §§ 1981, 1983, and 1988 and the [First,] [Fourth,] [Fifth,] and [Fourteenth] Amendments to the United States Constitution." [Doc. No. 62, ¶ 5]. Plaintiff also adds the state claims of tortious interference based solely on the alleged facts. [Doc. No. 62, ¶ 24].

On January 17, 2006, this Court denied outright Webb County's Motion to Dismiss. [Doc. No. 42]. As to Defendant Flores, the Court, pursuant to Rule 7(a) of the Federal Rules of Civil Procedure, ordered Plaintiff to respond to Flores' assertion of qualified immunity. [Doc. No.

42 at 7]. Plaintiff timely complied. [Doc. No. 50-1]. The issue presently before the Court is whether Defendant Flores' assertion of qualified immunity warrants dismissal of Plaintiff's claims against Flores in his individual capacity.

## II.     DISCUSSION

### A. Dismissal Standard

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a claim "for failure to state a claim on which relief can be granted."  Dismissal is warranted when it is clear that a plaintiff can "prove no set of facts in support of his claim that would entitle him to relief." *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (citing *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990)). In evaluating the sufficiency of the pleadings, a court treats all well-pleaded facts as true, "viewing them in the light most favorable to the plaintiff." *Id.* (citing *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996)). A court should not dismiss a claim unless the plaintiff would not be entitled to relief under "any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citing *Vander Zee v. Reno*, 73 F.3d 1365, 1368 (5th Cir. 1996)).

In moving for dismissal, Defendant Flores argues that Plaintiff has failed to plead sufficient facts, with sufficient specificity, to overcome Flores' assertion of qualified immunity. [Doc. Nos. 16, 18]. In this procedural context, when a defendant asserts qualified immunity, the dispositive inquiry is whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right[.]" *Saucier v. Katz and In Defense of Animals*, 533 U.S. 194, 201 (2001). If, and only if, the answer is affirmative, does the reviewing court determine whether the right allegedly

violated was "clearly established" when the injury occurred. *Id.* Therefore, the Rule 12(b)(6) rubric, as it is to be applied in this case, is informed by the additional burdens imposed by Defendant's assertion of qualified immunity.

**B.  Plaintiff's Invocation of 42 U.S.C. §§ 1981 and 1988**

Plaintiff states that his claims "arise under" 42 U.S.C. §§ 1981, 1983, and 1988, as well as the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution. [Doc. No. 62, ¶ 5].

First, Plaintiff's claims decidedly do not "arise under" § 1981, since Plaintiff fails to allege discrimination on the basis of race, which any cognizable § 1981 claim must. *See Olivares v. Martin*, 555 F.2d 1192, 1196 (5th Cir. 1977).

Plaintiff's invocation of § 1988 is likewise facially inappropriate. That statute provides, in relevant part, that:

> [t]he jurisdiction . . . conferred on the district courts by the provisions of this chapter and Title 18, for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause . . . .

Section 1988 acts as a sort of "gap filler," providing that state law will govern aspects of civil rights litigation that are not positively governed by federal law, since "existing federal law will not cover every issue that may arise in the context of a federal civil rights action." *Moor v. County of Alameda*, 411 U.S. 693, 702 (1973). Thus, § 1988 does not provide an independent cause of action for the vindication of federal rights; it is intended merely to compliment statutes that do, such as § 1983. *Id.* A common example of the statute's

4

applicability is where federal law is silent on the issue of damages, even though the law by implication contemplates the availability of all adequate remedies. *See*, *e.g.*, *Sullivan v. Little Hunting Park*, 396 U.S. 229, 240 (1969) (Holding that since § 1982 does not provide for specific damages, courts, per § 1988, should look to state remedies if such "serve[] the policies expressed in the federal statutes."). Section 1988 also works to fill procedural gaps in the respective federal statute. *See Wilson v. Garcia*, 471 U.S. 261, 266-267 (1985) (reading § 1988 to mandate application of the respective state's statute of limitations to claims brought under § 1983).

Given the purpose served by § 1988, the Court is at a loss as to why Plaintiff invokes that statute. Plaintiff fails to provide any basis on which to conclude that § 1983 is somehow deficient as a mechanism with which he may vindicate his federally conferred rights. In other words, Plaintiff fails to implicate a "gap" which the Court must fill with state law.  Therefore, the Court will not consider Plaintiff's invocation of § 1988 in its analysis below.

Given the inapposite status of §§ 1981 and 1988 to the complaint as it now stands, it is apparent that the true statutory basis of Plaintiff's complaint is 42 U.S.C. § 1983.

### C.  Plaintiff's § 1983 Claims

In order to recover under § 1983, a plaintiff must show, first, that the defendant deprived him of a right secured to him under the Constitution and laws of the United States and, second, that the defendant did so under the color of state law. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 150 (1970). [Doc. No. 62, ¶ 7].

Plaintiff invokes § 1983 in claiming that "the Sheriff's Department and Webb County have instituted specific policies which discriminate against Castaneda and have subjected [Plaintiff] to disparate treatment thus causing financial harm." As explained above, the Court,

as it is often called upon to do, must nudge Plaintiff's claims toward the nearest increment of legal cognoscibility if Plaintiff has otherwise alleged a set of facts that can possibly entitle him to relief under some legal theory. Based on the facts alleged, the Court reads Plaintiff's complaint as alleging that Defendants, under the color of state law, deprived Plaintiff of rights secured to him under the Constitution. Here, Plaintiff specifically claims a deprivation of his First, Fourth, Fifth, and Fourteenth Amendment rights.[1]

However, as stated above, Plaintiff's complaint must not only state a cognizable claim under § 1983, but must also be able to withstand Defendant Flores' assertion of qualified immunity. The central inquiry then becomes whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right[.]" *Saucier v. Katz and In Defense of Animals*, 533 U.S. 194, 201 (2001). If so, the Court must determine whether the right allegedly violated was "clearly established" when the injury occurred. *Id.*

The Court has no doubt, assuming the truth of the facts alleged, that Plaintiff has suffered a constitutional injury. Distilled to its essence, Plaintiff's complaint alleges that Defendants have systematically prohibited Plaintiff from conducting his business as a bail bondsman, based not on lawful reasons, but in a malicious attempt to retaliate against Plaintiff for his political opposition to Defendant Flores. On its face, these allegations implicate at least two constitutional rights: the Fourteenth Amendment right to procedural due process before being deprived of a property interest, and the right to free speech under the First Amendment.

---

[1] Plaintiff's allegation of "disparate treatment" is best interpreted as an attempt to support his § 1981 claim, even though Plaintiff invokes that concept within the context of describing his § 1983 claim. [Doc. No. 62, ¶ 7]. However, as already stated, Plaintiff has not stated a cognizable claim under § 1981 because he fails to allege discrimination on the basis of race. [Doc. No. 49 at 2-3]. Therefore, the Court will make no further mention of Plaintiff's lone reference to "disparate treatment," as the Court deems it gratuitous to his true claim as construed.

However, the Court fails to see how the facts alleged could have given rise to Fourth and Fifth Amendment injuries. [Doc. No. 62, ¶ 5].

Since Plaintiff does state a cognizable injury under the First and Fourteenth Amendments, the Court must now determine whether those rights were "clearly established" when violated. In answering this question, courts must not make the mistake of contemplating the given right *in the abstract*; thus, the question here is not whether Defendants were somehow on notice that the First Amendment guarantees the right to free speech, or the Fourteenth Amendment, due process. To approach the analysis in this manner would undermine the entire purpose of qualified immunity, which is not merely an affirmative defense to liability but a wholesale immunity from suit. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). It is not possible for courts to hypothetically address every possible scenario in which peace officers must exercise their judgment. For this reason, the Supreme Court has made clear in its qualified immunity jurisprudence that this "clearly established" prong should not be used to evaluate the favorability of an officer's decisions through the lens of 20/20 hindsight. *See*, *e.g.*, *Graham v. Connor*, 490 U.S. 386, 393 (1989).

Therefore, the law in question must have been clearly established in a "more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates the law." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The Court finds that Plaintiff, assuming the truth of his allegations, is able to overcome this burden quite easily. Plaintiff alleges that Flores, using his power as sheriff, barred Plaintiff from conducting bail bond business on numerous occasions without any legal basis, despite a temporary restraining order issued by a Texas state court that forbade Flores from preventing "C[astaneda] Bail Bonds from doing

business and doing bonds at the Webb County Jail or any other county in the State of Texas."
[Doc. No. 62, ¶ 18]. Plaintiff asserts that when Flores, in the face of the TRO, continued to
prohibit Plaintiff from doing business, Plaintiff obtained a letter from the judge who issued
the TRO confirming its mandate. [Doc. No. 62, ¶ 19]. However, Plaintiff was allegedly
informed by several of Flores' employees that he would not be allowed to conduct his
business in Webb County, regardless of the TRO. [Doc. No. 62, ¶ 19]. Defendant Flores'
alleged motivation in engaging in the above conduct was to retaliate against Plaintiff for the
latter's vociferous political opposition to Defendant Flores as County Sherriff, as well as
Plaintiff's refusal to donate to Flores' electoral campaign fund.

Over thirty years ago, in *Bell v. Burson*, 402 U.S. 535 (1971), the U.S. Supreme Court
held that:

> [o]nce licenses are issued, as in petitioner's case, their continued possession
> may become essential in the pursuit of a livelihood. Suspension of issued
> licenses thus involves state action that adjudicates important interests of the
> licensees. In such cases the licenses are not to be taken away without that
> procedural due process required by the Fourteenth Amendment . . . This is but
> an application of the general proposition that relevant constitutional restraints
> limit state power to terminate an entitlement whether the entitlement is
> denominated a "right" or a "privilege." *Sherbert v. Verner*, 374 U.S. 398
> (1963) (disqualification for unemployment compensation); *Slochower v. Board
> of Education*, 350 U.S. 551 (1956) (discharge from public employment);
> *Speiser v. Randall*, 357 U.S. 513 (1958) (denial of a tax exemption); *Goldberg
> v. Kelly*, supra (withdrawal of welfare benefits). *See also Londoner v. Denver*,
> 210 U.S. 373, 385-86 (1908); *Goldsmith v. Board of Tax Appeals*, 270 U.S.
> 117 (1926).

*Id.* 537-39; *see also Dixon v. Love*, 431 U.S. 105, 110 (1977) (noting the same where the
claimant was a commercial truck driver). Defendants' conduct, if proven true, is tantamount to
a suspension of Plaintiff's bail bondsman license. Thus, no reasonable and minimally
cognizant peace officer could engage in the specific conduct alleged without understanding
that doing so violated the respective individual's rights.

It cannot be gainsaid that the present analysis assumes the truth of the allegations. With that caveat, it is difficult to imagine a set of allegations which, if proven true, could better establish that Defendant Flores knew he was violating the law. Considering the allegations in isolation, it is obvious that a reasonable state officer acting in such a manner would understand that he is trampling on the rights of another.

Defendant Flores, in his Reply to Plaintiff's Rule 7(a) Response, adds additional facts to the narrative in order to demonstrate how his conduct was in fact reasonable. For example, in response to Plaintiff's assertion that Flores mislead the Bond Board into suspending Plaintiff's license, and thereby used that decision as a pretext for impeding Plaintiff's business, Flores argues that his conduct was in fact reasonable because he was just "follow[ing] the Bond Board's valid order . . . ." [Doc. No. 53-1, ¶ 5]. In making such arguments, however, Defendant seems to forget the current procedural posture—at this stage in the proceedings, the Court does not weigh evidence in order to determine what Defendant Flores did, and why he did it. That task is reserved for the fact finder. Rather, the Court looks *only* to the allegations made by Plaintiff, and assumes those allegations are true in determining whether Plaintiff can overcome Defendant's assertion of qualified immunity. The Court concludes that he can.

In his Motion to Dismiss, as well as his subsequent filings, Defendant Flores focuses his attack solely on Plaintiff's federal claims.[2] [Doc. No. 16]; [Doc. No. 52-1]. Therefore, the Court will not address the sufficiency of the complaint as to Plaintiff's state tort claims.

---

[2] Indeed, Defendant Flores' invocation of qualified immunity applies only to Plaintiff's federal claims. *See Greiner v. Champlin*, 816 F. Supp. 528, 545 (D. Minn. 1993) ("The federal doctrine of qualified immunity does not apply to claims brought under [state] law."); *Fernandez v. San Antonio Hous. Auth.*, 2005 U.S. Dist. LEXIS 32043 (D. Tex. 2005) (noting that "qualified immunity applies to federal causes of action, while 'official immunity' . . . applies to state-law cause of action.").

Plaintiff's claims brought under 42 U.S.C. § 1981 and § 1988 are **DISMISSED**, as are his Fourth and Fifth Amendment claims brought pursuant to § 1983. However, Defendant Flores' Motion to Dismiss Plaintiff's First and Fourteenth Amendment claims, brought pursuant to § 1983, is **DENIED**.

IT IS SO ORDERED.

DONE this 20th day of September, 2006, in Laredo, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**