O

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## LAREDO DIVISION

| | | |
|---|---|---|
| **GREGORIO J. CASTANEDA, JR. d/b/a** § | | |
| **CASTANEDA BAIL BONDS,** § | | |
| § | | |
| *Plaintiff*, § | | |
| **v.** § | Civil Action No. 5:05-cv-129 | |
| § | | |
| **WEBB COUNTY SHERIFF RICK** § | | |
| **FLORES, Individually and in his Official** § | | |
| **Capacity as Sheriff of Webb County;** § | | |
| **WEBB COUNTY; and WEBB COUNTY** § | | |
| **BAIL BOND BOARD,** § | | |
| § | | |
| *Defendants*. § | | |

## OPINION AND ORDER

Pending before the Court is Defendants' First Amended Motion for Summary Judgment. [Dkt. No. 101]. Plaintiff has filed a Response, which includes an Objection to Defendants' Affidavits. [Dkt. No. 103]. Upon due consideration of the pleadings, responsive filings, and the governing law, the Court OVERRULES Plaintiff's Objection as moot and GRANTS Defendants' Motion for Summary Judgment.

### I.   PROCEDURAL HISTORY AND RELEVANT FACTS

Plaintiff Gregorio Castaneda operates a bail bond business in Webb County, Texas. [Dkt. No. 50-1 at 1]. In his Second Amended Complaint, Plaintiff alleges that Webb County Sheriff Rick Flores, Webb County, and the Webb County Bail Bond Board have together "instituted a series of policies which are designed to prevent Castaneda from conducting his lawful business as a bondsman." [Dkt. No. 62, ¶ 7]. Specifically, Plaintiff alleges that as a result of a personal altercation between himself and Defendant Flores, and upon refusing to donate to Sheriff Flores'

electoral campaign, Flores declared that Plaintiff "would never conduct bail bond business in [Webb] [C]ounty," and that Plaintiff would "never be able to step into the [C]ounty [J]ail or [C]ounty [B]ail [B]ond [D]epartment," as is necessary for Plaintiff to conduct his business. [Dkt. No. 62, ¶ 11]. Plaintiff claims that Defendants thereafter followed through with this threat by allegedly engaging in malicious conduct, such as convincing the Webb County Bail Bond Board that Plaintiff was "mentally unstable," and that Plaintiff was "involved in unauthorized entry of information concerning a bond." [Dkt. No. 62, ¶ 12]. Plaintiff claims that, ultimately, through the encouragement of Defendant Flores, the Bond Board wrongfully suspended Plaintiff's bonding license. [Dkt. No. 62, ¶ 15].

On September 20, 2006, the Court issued an Opinion & Order denying in part and granting in part Defendant Rick Flores' Motion to Dismiss based on qualified immunity. [Dkt. No. 69]. The Court at that time distilled Plaintiff's somewhat confusing complaint down to the following causes of action: (1) a claim, pursuant to 42 U.S.C. § 1983, that Defendants, acting under the color of state law, (a) punished Plaintiff for exercising his right to speak freely under the First Amendment, and (b) denied Plaintiff a property interest—that is, his ability to engage in his occupation—without due process of law in violation of the Fourteenth Amendment, [Dkt. No. 69 (referring to Plaintiff's Second Amended Complaint, Dkt. No. 62)]; (2) tortious interference with contract; and (3) tortious interference with prospective business relationships. *Id.*

On July 6, 2007, Defendants filed the Amended Motion for Summary Judgment now before the Court. [Dkt. No. 101]. Plaintiff timely filed a response. [Dkt. No. 103]. In his Response, Plaintiff filed an objection to several affidavits included in Defendants' *original* Motion for Summary Judgment, but omitted in their Amended Motion. [Dkt. No. 103 at 5].

## II. DISCUSSION

Federal Rule of Civil Procedure 56(c) provides for summary judgment if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 263 (1986). An issue is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the non-moving party." *Id.* at 261. The Court reviews the record by drawing all inferences most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). Once a moving party has met its burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).

Assuming no genuine issue exists as to the material facts, the Court will then decide whether the moving party shall prevail solely as a matter of law. *Id.* The moving party is entitled to judgment as a matter of law if "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### A. Tortious Interference with Contract

Plaintiff asserts his claim of tortious interference with contract only against Defendant Flores, [Dkt. No. 62, ¶ 25], a claim presumably premised on the allegation that Flores' conduct had the effect of prohibiting Plaintiff from posting bonds for customers whose patronage he had previously accepted.

"The elements of a cause of action for tortious interference with a contract are: (1) the existence of a contract subject to interference, (2) the occurrence of an act of interference that was willful and intentional, (3) [an] act [that] was a proximate cause of the plaintiff's damage[s], and (4) actual damage or loss . . . . *Holloway v. Skinner*, 898 S.W.2d 793, 795-96 (Tex. 1995); *see also Browning-Ferris Indus. v. Reyna*, 865 S.W.2d 925, 926 (Tex. 1993); *Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 939 (Tex. 1991). Texas courts have consistently read the second element of this tort to require a showing that the defendant "wrongly induce[d] another contracting party to breach the contract." *Holloway*, 898 S.W.2d at 794-95; *see also Powell Indus., Inc. v. Allen*, 985 S.W.2d 455, 457 (Tex. 1998); *Swank v. Sverdlin*, 121 S.W.3d 785, 800 (Tex. App.—Houston [1st Dist.] 2003, pet. denied); *Pruitt v. United Chester Indus., Inc.*, 2000 Tex. App. Lexis 5767 (Tex. App.—Dallas 2000, pet. denied).

The evidence presented by Defendants establishes the absence of a contract subject to interference, and the absence of any conduct by Defendant Flores that "induced" any third party into breaching same. This evidence is essentially uncontroverted by Plaintiff, as his Response amounts to nothing more than a series of conclusory assertions that genuine fact issues exist. Such is insufficient to prevent summary judgment in Defendants' favor.

### B. Tortious Interference with Prospective Business Relations

Plaintiff asserts his claim of tortious interference with a prospective business relationship only against Defendant Flores. [Dkt. No. 62, ¶ 25].

As the Texas Supreme Court noted in *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 713 (Tex. 2001), it has rarely had the occasion to articulate with great precision what a plaintiff must prove in order to recover under this cause of action. Indeed, the Court further evaded such a task in *Struges*. Nonetheless, lower Texas courts have pieced together the following rule:

4

> The elements of a claim for tortious interference with a prospective business relationship include: (1) a reasonable probability that the parties would have entered into a contractual relationship; (2) an "independently tortious or unlawful" act by the defendant that prevented the relationship from occurring; (3) the defendant did such act with a conscious desire to prevent the relationship from occurring or he knew that the interference was certain or substantially certain to occur as a result of his conduct; and (4) the plaintiff suffered actual harm or damage as a result of the defendant's interference.

*RAJ Partners, Ltd. v. Darco Constr. Corp.*, 217 S.W.3d 638 (Tex. App. 2006); *Ash v. Hack Branch Distrib. Co.*, 54 S.W.3d 401, 414-15 (Tex. App.—Waco 2001, pet. denied); *see also Axcess Broad. Servs. v. Donnini Films*, 2006 U.S. Dist. Lexis 66779 (N.D. Tex. 2006).

Thus, a plaintiff may recover, for example, against:

> a defendant who makes fraudulent statements about the plaintiff to a third person without proving that the third person was actually defrauded. If, on the other hand, the defendant's statements are not intended to deceive . . . then they are not actionable. Likewise, a plaintiff may recover for tortious interference from a defendant who threatens a person with physical harm if he does business with the plaintiff. The plaintiff need prove only that the defendant's conduct toward the prospective customer would constitute assault. Also, a plaintiff could recover for tortious interference by showing an illegal boycott, although a plaintiff could not recover against a defendant whose persuasion of others not to deal with the plaintiff was lawful. Conduct that is merely "sharp" or unfair is not actionable and cannot be the basis for an action for tortious interference with prospective relations, and we disapprove of cases that suggest the contrary.

*Sturges*, 52 S.W.3d at 713. As is made clear both by the examples provided in *Struges*, as well as this claim's close relationship with the tort of contract interference, in order to recover under this theory the plaintiff must show that the defendant's conduct *toward a third person* motivated that person to commercially disengage with plaintiff. As Defendants illustrate, the record does not present a triable issue as to whether Defendant Flores committed some independent tortious act against a third person—*i.e.* any of Plaintiff's bail bond customers—that interfered with Plaintiff's business. The record reflects only evidence that Defendant Flores' allegedly tortious conduct *toward the Plaintiff* had the effect of harming Plaintiff's business (although the degree of harm is

unclear.) Such is not enough to prove tortious interference with a prospective business relationship.

### C. Plaintiff's § 1983 Claims

In order to recover under § 1983, a plaintiff must show, first, that the defendant deprived him of a right secured to him under the Constitution or laws of the United States and, second, that the defendant did so under the color of state law. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 150 (1970).

The Court agrees with Defendants' argument that the record presents insufficient facts to create a genuine fact issue as to whether Defendant Flores, under the color of state law, punished Plaintiff for his vociferous political opposition. Thus, to the extent that Plaintiff advances a § 1983 claim premised on a violation of his First Amendment rights, summary judgment is appropriate as to that claim.

With regard to his procedural due process claim, Plaintiff alleges that Defendant Flores, using his power as Sheriff, prohibited Plaintiff from conducting bail bond business on numerous occasions without legitimate basis. [Doc. No. 62, ¶ 18]. The Court previously concluded that such allegations reduced to a claim that Plaintiff was denied a property right without due process of law, in violation of the Fourteenth Amendment. [Dkt. No. 69]. As Defendants note, the evidence in the record demonstrates the absence of a genuine fact issue as to whether Plaintiff suffered any constitutional injury—that is, that their alleged "policy" "did not prevent Plaintiff from conducting his bonding business," [Dkt. No. 101, ¶ 37], and therefore they did not deny Plaintiff a property right. The Court agrees.

The evidence in the record (and perhaps the nature of the occupation) suggests that, in order to engage in the bail bond business, at least in Webb County, one cannot circumvent doing

6

business in or with the Webb County Sherriff's Department and the Webb County Jail. [Castaneda Dep., Dkt. No. 83-3 at 26, 27, 64, 66-67, 73-74, 106-107]. In his affidavit, Plaintiff asserts that he was told by the Sheriff's Department that he "could no longer sign bonds," and that he was "barred from the [C]ounty [J]ail premises." [Dkt. No. 83-5 at 3]. Supporting this assertion is a letter written by Defendant Flores shortly after a verbal altercation with Plaintiff, advising the Webb County Bail Bond Board that he was "barring [Plaintiff] while awaiting action by the . . . Board." [Dkt. No. 83-6 at 3]. The letter also recommends "exclude[ing] [Plaintiff] from doing business at or near [the] jail and/or administrative building," and otherwise recommending "[p]ermanent suspension of his license." [Dkt. No. 83-6 at 3]. This letter was written before the Bail Bond Board made any finding warranting suspension of Plaintiff's bond license.

Absent contradictory material, these documents would be competent summary judgment evidence that, in "barring" Plaintiff from the County Jail before the Bond Board determined there was a basis for prohibiting Plaintiff from issuing bonds, Defendant Flores effectively denied Plaintiff his ability to sustain his business without due process of law. However, in his deposition, Plaintiff flatly admits that, during the period immediately following Sheriff Flores' March 22nd letter, he was nevertheless able to post bonds. [Dkt. No. 83-3 at 111-113]. Defendant has therefore shown that Plaintiff was not denied a property right for procedural due process purposes.

### III.    CONCLUSION

The record, being as thin as it is, begs many questions about what actually happened between Plaintiff and Defendants in the days leading up to the filing of this suit. In any event, one thing is clear: despite any wrongdoing Defendants may or may not have committed, a plaintiff cannot

7

survive summary judgment based on evidence as meager as that provided by Plaintiff in this matter. Defendants' Amended Motion for Summary Judgment, [Dkt. No. 101], is **GRANTED** in its entirety. Additionally, because Defendants did not include with their Amended Motion for Summary Judgment the affidavits of Sandra Martinez, Bryan Portillo, Ulysses Ortegon, Louis Zapata, and Rick Flores, Plaintiff's pending objection to these affidavits is **DENIED** as moot.

IT IS SO ORDERED.

Done this 13th day of August, 2007, in Laredo, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**